**Sherry L. HAEHN, Plaintiff,**

v.

**CITY OF HOISINGTON; Tom De Arman, Individually and as City Manager of the City of Hoisington; Wes Teel, individually and as Chief of Police of the City of Hoisington, Defendants.**

**No. 86–1280–C.**

United States District Court, D. Kansas.

Dec. 1, 1988.

Karlin Lawing, Jack Focht, Wichita, Kan., for plaintiff.

Casey R. Law, Turner & Boisseau, Joel B. Jackson, Great Bend, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several motions of the defendants. Plaintiff asserts claims of civil rights violations and pendent state tort actions from her termination on June 18, 1985, as a police officer and part-time employee of the ambulance service with the City of Hoisington. Plaintiff was the first woman police officer employed by the City of Hoisington, and her employment continued from January of 1985 until her termination in June of the same year.

Plaintiff's husband, Curtis Haehn, brought a related action based on similar facts and allegations on his termination on June 28, 1985, from the position as supervisor of the power plant of the City of Hoisington. Defendants advanced many of the

same motions and argument in that case which were addressed by the court in an order filed November 18, 1988. When relevant, appropriate and expeditious, the court will refer to discussion and holdings in that earlier order.

Defendants Tom De Arman and Wes Teel move to dismiss the Title VII claim making the identical argument that they made in *Curtis Haehn v. City of Hoisington*, No. 86–1279–C [1988 WL 131644] that they were not named parties in EEOC complaints. The court denies the motion for the same reasons stated in the order filed on November 18, 1988.

The City of Hoisington also moves to dismiss any claim of punitive damages against it. Plaintiff again responds that no claim for punitive damages is made against the City of Hoisington. The next matter is defendants' motion for summary judgment.

■ In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial and grants summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court is to be concerned with the sufficiency of the evidence, not its weight. *Casper v. C.I.R.*, 805 F.2d 902, 904 (10th Cir.1986.) Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the nonmoving party for a jury to return a verdict for that party. 477 U.S. at 249, 106 S.Ct. at 2510. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

The movant's burden under Fed.R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). To show an absence of material fact, the movant must specify those portions of "the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits if any." Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c), which demonstrate a genuine issue remaining for trial. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1986).

Defendants' statement of uncontroverted facts is identical to those filed in the husband's case. The wife controverts many facts in the same fashion as her husband did. The court adopts the position enunciated in the earlier order filed in the husband's case.

## I. TITLE VII CLAIM—SEXUAL HARASSMENT

■ Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.*, prohibits employment discrimination on account of race, color, religion, sex and national origin. Sexual harassment is a recognized form of employment discrimination proscribed by Title VII. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987). Courts have

categorized sexual harassment cases into two groups: *quid pro quo* and hostile work environment. When submission to sexual conduct is made a condition of employment benefits, the case is termed *quid pro quo* sexual harassment. *Henson v. City of Dundee,* 682 F.2d 897, 908 (11th Cir.1982). A hostile work environment occurs when " 'such [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) [quoting 29 C.F.R. § 1604.11(a)(3) ].

In a claim of a hostile work environment because of sexual harassment, the employee must prove the following for a prima facie case: (1) that the employee belongs to a protected group; (2) that the employee was subject to "unwelcome" sexual harassment; (3) that the harassment complained of affected a "term, condition, or privilege" of employment. *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987); *see also Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010, 1013 (8th Cir.1988). To show that the harassment was due to her sex, plaintiff must prove that "but for the fact of her sex, she would not have been the object of harassment." *Henson v. City of Dundee,* 682 F.2d at 904. Element three is satisfied when plaintiff shows a nexus between the alleged conduct and the existing employment situation. In other words, the sexual harassment "must be sufficiently severe or persuasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2406 [quoting *Henson,* 682 F.2d at 904). Whether the sexual conduct meets this threshold is determined from the totality of the circumstances. *Hicks,* 833 F.2d at 1414 [quoting *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981) ]. To be actionable, the alleged sexual conduct must be sustained, repeated or persistent. *Downes v. F.A.A.,* 775 F.2d 288, 293 (Fed. Cir.1985). In some instances, the severity of the offensive conduct may reduce the need for sustained exposure. *Vermett v.*

*Hough,* 627 F.Supp. 587, 606 (W.D.Mich. 1986).

Defendants begin their argument by sifting out of plaintiff's evidence of sexual misconduct those incidents which are not potentially relevant and admissible. Defendants' screen is much finer than the recognized law of the Tenth Circuit as recently enunciated in *Hicks v. Gates Rubber Co.,* 833 F.2d at 1414–1417. In *Hicks,* the court agreed with the holding of *McKinney v. Dole,* 765 F.2d 1129, 1138–39 (D.C.Cir. 1985), that acts which are not overtly sexual may still constitute sexual acts under Title VII if they would not have occurred but for the sex of the employee. 833 F.2d 1414–1415. The Tenth Circuit also held that incidents of sexual harassment directed at employees other than plaintiff is admissible evidence of a hostile work environment. 833 F.2d at 1415–1416.

For purposes of summary judgment motions, the court cannot exclude from its consideration those allegations of sexual conduct which occurred after work hours. Plaintiff has raised a sufficient question of fact that this conduct has an evidentiary nexus to the work environment.

Plaintiff has adequately controverted defendants' statement of facts as to the incidents of sexual conduct. Plaintiff has brought forward evidence of at least eight such incidents. The alleged incidents are sufficiently pervasive and severe as to alter a condition of her employment. Defendants' motion for summary judgment on this claim is denied.

## II. TITLE VII—RETALIATORY ACTION CLAIM

Defendants contend "there is simply no evidence of 'retaliatory action' " by them as a result of the content of plaintiff's alleged complaints about sexual harassment. Defendants argue the plaintiff's form of protest is not necessarily protected if it violates legitimate disciplinary rules. In his affidavit, defendant Tom De Arman, the former city manager of the City of Hoisington, states that plaintiff was terminated because her conversations with other city employees interfered with the management

of the police department and the city and because of her insubordinate and abusive public remarks about the city administration. Plaintiff controverts the substance of defendants' statement of facts.

■ A prima facie case of retaliation is shown where (1) plaintiff engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) employer took adverse action subsequent to or contemporaneous with such employee activity, and (3) a causal connection exists between the protected activity and the adverse employment action. *Love v. Re/Max of America, Inc.,* 738 F.2d 383, 385 (10th Cir.1984); *Burrus v. United Telephone Co. of Kansas,* 683 F.2d 339, 343 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). The causal connection may be proven with circumstantial evidence that justifies an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Burrus,* 683 F.2d at 343. The passing of three years from the filing of charges to the adverse action of employment termination did not support an inference of retaliation in *Burrus.* 683 F.2d at 343. In *Love,* a causal connection was shown where within two hours of the protected activity plaintiff was fired. 738 F.2d at 386.

■ Plaintiff has presented a prima facie case for purposes of the summary judgment proceedings. The temporal proximity between plaintiffs' discharge and her complaints of sexual harassment sustain an inference of a retaliatory motive. De Arman's ineffective response to plaintiff's complaints and his failure to try less drastic disciplinary measures than termination of plaintiff, raise a question of material fact as to whether De Arman's stated reasons are pretextual. Defendants' motion is denied on this claim.

## III. PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A. *Conspiracy*

The court is unable to find anywhere in plaintiff's contentions in the pretrial order a conspiracy claim under 42 U.S.C. § 1985(3).

### B. *First Amendment*

Defendants contend plaintiff's sarcastic public comments are not protected from legitimate enforcement of disciplinary rules. The court refers to the discussion of relevant law on First Amendment claims found in the order filed in the related case No. 86–1279–C. Again, questions of material fact prevent summary judgment. Plaintiff has sufficiently shown that she complained of sexual harassment through proper channels and shortly thereafter, she was terminated. The reason for termination is a contested factual issue. Defendants' motion is denied.

### C. *Due Process Claim*

Plaintiff does not respond to defendants' arguments on this issue. The court is unable to find in the pretrial order any claim by plaintiff as to deprivation of a property interest without due process of law. The court need not address defendants' contentions.

## IV. TORT OF OUTRAGE

Defendants contend none of their alleged conduct reach the threshold requirements of an action for intentional infliction of emotional distress. Plaintiff relies on case law from other jurisdictions recognizing that sexual harassment may constitute a cognizable claim for the tort of outrage or intentional infliction of emotional distress.

The court simply refers and adopts the discussion of law regarding the tort of outrage found in the order filed in the husband's case, No. 86–1279. The court agrees that summary judgment for defendants on this claim is appropriate. While defendants' alleged sexual conduct is intolerable and actionable under Title VII and § 1983, the court does not believe it is so extreme and outrageous as such conduct has been defined and applied in Kansas law. In addition, plaintiff's alleged emotional distress is not of such an extreme degree that no reasonable person should be expected to endure it. Defendants' motion on this claim is granted.

## V. INVASION OF PRIVACY CLAIM

■ Defendants contend that sexual comments and brief touching do not amount to a claim of invasion of privacy. Plaintiff responds that the comments were directed towards her intimate and personal sexual life and that these comments combined with the incidents of touching do constitute an invasion of privacy.

The court refers and adopts the discussion of law on this issue found in the order filed in case No. 86–1279. The court has reviewed the case law cited by plaintiff and is concerned whether her allegations are an actionable invasion of privacy. Plaintiff acknowledges her invasion of privacy claim rests on the terms of Restatement (Second) of Torts § 652B as interpreted and applied by Kansas courts.

Kansas decisions discussing Restatement (Second) of Torts § 652B, *Intrusion upon Seclusion,* have focused on two factors: whether there has been an intentional interference in the solitude or seclusion of a person's physical being, or a prying into his or her private affairs or concerns, and whether the intrusion would be highly offensive to a reasonable person. *Werner v. Kliewer,* 238 Kan. 289, 294, 710 P.2d 1250 (1985); *see also Froelich v. Werbin,* 219 Kan. 461, 464–65, 548 P.2d 482 (1976). In *Werner,* the defendant doctor wrote a letter to the state district court judge presiding over a divorce proceeding involving the plaintiff. The doctor described plaintiff's admission and stay at Prairie View Hospital and referred to her psychological problems which led to her admission. The Kansas Supreme Court affirmed the district court's grant of summary judgment against plaintiff's invasion of privacy claim, stating in pertinent part:

> Does the conduct of Dr. Kliewer meet the necessary tests of § 652B? We think not. Generally, the tort of intrusion upon seclusion is based upon the manner in which an individual obtains information. Several cases are illustrative: installation of an electronic listening device in a tenant's bedroom, *Hamberger v. Eastman,* 106 N.H. 107, 206 A.2d 239 (1964); taking pictures and peeking through windows with binoculars, *Souder v. Pendleton Detectives,* 88 So.2d 716 (La.App.1956); unauthorized prying into the plaintiff's bank account, *Brex v. Smith,* 104 N.J.Eq. 386, 146 A. 34 (1929). See also Prosser and Keeton on Torts § 117, 854–856 (5th ed. 1984). In addition, the intrusion must be highly offensive to a reasonable person. Here, there was no information in the letter written by Dr. Kliewer which would not have been obtainable through customary discovery procedures. Appellant does not deny the truth or accuracy of the contents of the letter and it is admitted that there is nothing in the letter which was not already known by her husband. The welfare and future custody of the minor children were at stake and although it would have been preferable to have followed standard court and discovery procedures, the information revealed, under the circumstances of this case, certainly does not rise to the level of being highly offensive to a reasonable person. Mrs. Werner had previously attempted suicide, had contemplated it the day she checked into the hospital, and had indicated that she might harm the children. While the disclosure of intimate facts and opinions about Mrs. Werner's mental condition would ordinarily be highly objectionable, any such determination must be made in light of the totality of the circumstances. The letter was directed to a judge, who had the direct responsibility of determining the best interests of the minor children and to provide for their care and safety. Under all of the circumstances of this case, the disclosures made by Dr. Kliewer cannot be considered highly offensive to a reasonable person. The trial court was correct in ruling Mrs. Werner had failed to establish a cause of action based upon an intrusion upon her seclusion.

238 Kan. at 294–95, 710 P.2d 1250.

In the present case, plaintiff's action fails because there is no evidence of an intrusion as based on the manner in which the information is obtained. In a leading treatise, commentators have observed:

One form of invasion consists of intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home, or other quarters, or an illegal search of his shopping bag in a store. The principle has, however, been carried beyond such physical intrusion, and extended to eavesdropping upon private conversations by means of wiretapping and microphones; and there are decisions indicating that it is to be applied to peering into the windows of a home, as well as persistent and unwanted telephone calls....

It is clear, however, that there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad manners, harsh names, and insulting gestures in public are not enough.

Prosser and Keeton, *The Law of Torts*, 5th ed. pp. 854–55 (1984). Plaintiff has not shown that defendants made "intrusive or coercive sexual demands" upon her such that they constituted an "'examination' into her 'private concerns,' that is, improper inquiries into her personal sexual proclivities and personality." *Phillips v. Smalley Maintenance Services, Inc.*, 711 F.2d 1524, 1536 (11th Cir.1983). Defendant Teel's sexual comments and gesture do not constitute an invasion under § 652B. Even plaintiff admits Teel's occasional grabbing, touching, and rubbing of shoulders does not amount to an actionable invasion of her physical being. Defendant's motion for summary judgment on this claim is sustained.

## VI. RATIFICATION

Defendants City and De Arman contend the ratification doctrine is not available to plaintiff as to her claims of assault and battery and invasion of privacy. Since the court has already sustained the defendants' motion for summary judgment on the invasion of privacy claim, this discussion will concern only the assault and battery claim.

Plaintiff does not dispute the defendants' discussion of the law of ratification other than to state that De Arman is liable to failing to properly supervise Teel. Plaintiff accurately notes the general rule stated in comment a to Restatement (Second) of Agency § 358:

The doctrine of respondeat superior does not apply to create liability against an agent for the conduct of servants and other agents of the principal appointed by him, even though other agents are subject to his orders in the execution of the principal's affairs. He is, however, subject to liability under the rules stated in sections 344, 351, 356, if he directs or permits tortious conduct by them or fails properly to exercise control over them.

This rule is quoted in part in *Galvan v. McCollister*, 224 Kan. 415, 416, 580 P.2d 1324 (1978): "In the absence of wrongful directions or wrongful control or some other element involving wrongful conduct, the doctrine of respondeat superior does not apply to agents who are not masters." *See also* 6 Am.Jur.2d Assault and Battery §§ 131–134 (1963).

Plaintiff has presented evidence showing that De Arman and the City were aware of Teel's alleged actions and did not effectively discipline or reprimand him. Plaintiff has shown that De Arman, as city manager, exercised substantial control over Teel's actions and conduct and failed to control his alleged sexual conduct towards plaintiff and other female employees in the police department. While plaintiff's allegations and evidence support a claim of negligent supervision against De Arman, such a claim or theory is not found in the pretrial order. The court finds no factual support for plaintiff's ratification theory. Consequently, the court sustains defendant De Arman's motion.

## VII. IMMUNITY

■ Defendants first contend the Kansas Tort Claims Act, K.S.A. 75–6101 *et seq.*, precludes recovery on the plaintiffs' pendent state law claims. The only remaining claim is assault and battery. Defendant De Arman argues his decision on handling plaintiff's allegations and complaints about Teel's sexual harassment and assault and battery upon her clearly fall within the discretionary function exception at K.S.A. 75–6104(e). The court addresses this issue upon the assumption that plaintiff had

pleaded a claim of negligent supervision against De Arman.

"[T]he Kansas Tort Claims Act takes an open-ended approach to governmental liability. In other words, liability is the rule while immunity the exception." *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984). The burden rests upon the defendant to establish governmental immunity under one of the exceptions to K.S.A. 75–6104. *Id.*

The scope of the discretionary function exception was explored by the Kansas Supreme Court in *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982), in which the construction adopted was that followed by the Sixth Circuit in *Downs v. United States*, 522 F.2d 990 (6th Cir.1975). The Sixth Circuit discerned Congress' intent to have the discretionary function exception encompass those activities "which entail the formulation of governmental policy." 522 F.2d at 997. After defining the duty of the governmental entity or employee, the test applied is:

Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act. Conversely, if there is a standard by which his action is measured, it is not within the exception. The statute provides that if the act of the official is discretionary it is not actionable even though the discretion is abused.

*Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979).

In this district, a governmental employee's decision to terminate a subordinate's employment was noted as falling within the discretionary function of the Kansas Tort Claims Act. *Polson v. Davis*, 635 F.Supp. 1130, 1153 (D.Kan.1986). The basis of De Arman's liability for Teel's alleged assault and battery of plaintiff is his failure to properly supervise and control him. The court believes De Arman's administrative decisions on handling plaintiff's complaints and allegations about Teel clearly entailed the formulation of governmental policy. Defendant De Arman's motion is granted. As defendant City has failed to articulate any basis for its immunity, its motion is denied.

Defendant De Arman also seeks summary judgment on plaintiff's federal claims on the basis of "qualified good-faith" immunity. The court adopts and incorporates the discussion and holding on this issue in case No. 86–1279. The court believes plaintiff's allegations as to De Arman on her federal claims involve clearly established statutory or constitutional rights.

## VIII. PUNITIVE DAMAGES

For the same reasons stated in case No. 86–1279, the court denies defendants' motion for summary judgment on plaintiff's claim for punitive damages.

## IX. TITLE VII—UNEQUAL PAY CLAIM

The plaintiff's contentions in the pretrial order do not include any contention that she was denied equal pay in violation of Title VII. Among the "Issues of Fact" is the question of "whether plaintiff, because of her gender, was discriminated against in the terms and conditions of her employment with respect to the rate of pay, duties assigned and equipment used." Plaintiff has failed to properly advance an unequal pay claim under Title VII.

Assuming one had been pled in the pretrial order, plaintiff has not properly controverted defendants' statement of fact that she was not sexually discriminated against on the basis of her salary. Plaintiff's evidence attributes statements to defendant Teel that plaintiff would never make what a male police would be paid. These statements as to future action do not establish that her salary prior to termination was lower than that paid to a male police officer in a comparable position. Without any evidence of unequal salaries, plaintiff's claim is vulnerable to summary judgment.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment on plaintiff's Title VII claim of sexual

harassment and retaliation are denied, but the motion as to unequal pay is granted;

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's First Amendment claim is denied;

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's pendent state law claims is granted as to the claims of outrage and invasion of privacy; and defendant De Arman's motion for summary judgment on the claim of assault and battery is granted;

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's punitive damages claim is denied.