Cassedy STIEN and Brad Bauman,
Plaintiffs and Appellant,

v.

MARRIOTT OWNERSHIP RESORTS, INC.; Shari Leviton; Tom Messina; Brent Ferrin; and Peter Gatch, Defendants and Appellees.

No. 960798–CA.

Court of Appeals of Utah.

Aug. 14, 1997.

Gregory J. Sanders and Sandra L. Steinvoort, Salt Lake City, for Appellant.

Matthew M. Durham and Bryon J. Benevento, Salt Lake City, for Appellee Marriott Ownership Resorts.

Ryan E. Tibbitts and Julianne R. Blanch, Salt Lake City, for Appellee Shari Levitin.

Joseph T. Huggins, Salt Lake City, for Appellee Tom Messina.

Duane R. Smith and Cameron S. Denning, Salt Lake City, for Appellee Brent Ferrin.

Janet A. Goldstein, Park City, for Appellee Peter Gatch.

Before DAVIS, BENCH and ORME, JJ.

ORME, Judge:

Plaintiff Cassedy Stien appeals the dismissal, on summary judgment, of her complaint for invasion of privacy growing out of the screening of a tasteless video at a company party. We affirm.

### FACTS [1]

At the center of this case is a videotape for which defendants are responsible, in which seventeen employees of defendant Marriott Ownership Resorts, Inc. (Marriott), whose properties include Summit Watch in Park City, describe in detail a household chore they hate doing. The video includes appearances by nine men and eight women, including plaintiff's husband, Brad Bauman. The video does not identify any of the employees by name, job title, or employment task.

Unbeknownst to Mr. Bauman, and apparently unbeknownst to the other sixteen participants, the videotape was edited to make it appear as if the employees were answering the question, "What's sex like with your partner?" The video, about five minutes and twenty seconds long, was then shown at a formal company Christmas party for the amusement of some 200 Marriott employees and their guests, including Bauman and plaintiff.

The video opens with a closeup of a picturesque pond, with classical music playing in the background. After a second or two, a female voice serenely states: "Recently, we asked a collection of people what they thought and felt about having sex with their partner. Let's listen to their comments."

Following this introduction, the video presents edited clips of the employees' earlier descriptions of a household chore. Each employee-participant appearing in the video is seated in a chair behind what appears to be a conference room table. A caption appears for the first few minutes at the side of the participant, reading: "What's sex like with your partner?" The first employee appearing on the video is male and comments: "Having to carry this huge thing down some stairs; and it's heavy and it smells real bad." Similarly, another male employee states that he "hate[s] doing it because it involves so much time and energy." A female employee states that "[i]t's one of those greasy grimy things that you just have to do at least once a year whether you want to or not." Still another female employee states that she "hate[s] something that has to be done everyday." Not all of the comments were negative. For instance, one female employee stated that she was "very tall" and therefore was "good at it."

Interspersed throughout the video are comments made by Bauman. His statements and descriptions are as follows:

> The smell. The smell, the smell. And then you go with the goggles. You have to put on the goggles. And then you get the smell through the nose. And as you get into it things start flying all over the place. And the smell. And you get covered in these things.
>
> . . . .
>
> And you have to do it and you have to enjoy doing it. And you cannot—you can't—get into the idea that this is something that you don't want to do.
>
> . . . .
>
> But the smell gets worse and then it gets worse and then it gets worse.
>
> . . . .
>
> And then your biggest problem is you forget to remove this smell from the house and then you leave it there and then you come back and then your wife uncovers the smell.
>
> . . . .
>
> But I've found that the goggles work very well because eye protection is a very im-

---

1. "In reviewing a grant of summary judgment, we view the facts in a light most favorable to the losing party," *Mountain States Telephone & Tele-*

portant item.[2]

Once the employees' comments are concluded, the video returns to the scenic pond and accompanying background music which opened the video. The same female voice from the introduction concludes the video by stating: "So remember, we at Summit Watch are concerned about you achieving balance in your life. So let's make tonight the start of a productive and balanced new year."

Plaintiff did not appear in the video, nor is she ever mentioned by name, either by her husband, Mr. Bauman, or by any other participant. Nonetheless, plaintiff was not amused by the video. She and Bauman filed this lawsuit against Marriott and various individuals who had a hand in making the video, alleging that her privacy was invaded. Specifically, plaintiff alleged that defendants intruded upon her seclusion, appropriated her name and likeness for the benefit of Marriott, publicized private facts regarding plaintiff, and placed her in a false light. All defendants subsequently moved for summary judgment, which the court granted. In so doing, the trial court ruled, as a matter of law, that the elements constituting the four distinct torts of invasion of privacy could not be established by plaintiff. This appeal, pursued by plaintiff Cassedy Stien only, followed.

## ISSUES ON APPEAL

On appeal, plaintiff contends the trial court erred in ruling, as a matter of law, that the following privacy torts could not be established by plaintiff given the undisputed facts: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private facts; and (4) publicity placing a person in a false light.

## STANDARD OF REVIEW

"Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to

*graph Co. v. Garfield County,* 811 P.2d 184, 192 (Utah 1991).

**2.** These portions of Mr. Bauman's comments constitute the entirety of his statements shown on

judgment as a matter of law." *Mills v. Brody,* 929 P.2d 360, 362 (Utah.Ct.App.1996). "Because summary judgment presents only questions of law, we review the trial court's decision under a standard of correctness, according no deference to the trial court's legal conclusions." *Id.* "We may affirm a grant of summary judgment on any ground available to the trial court, even if it is one not relied upon by the trial court." *Otsuka Elecs. v. Imaging Specialists, Inc.,* 937 P.2d 1274, 1277 (Utah.Ct.App.1997).

## INVASION OF PRIVACY IN GENERAL

"[T]he law of privacy is a relatively recent phenomenon." *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70, 81 (1984). Even so, it has developed over the years into a widely accepted area of tort law, providing a remedy independent of other tort theories protecting reputation and peace of mind, including defamation and intentional infliction of emotional distress. *See generally* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy,* 4 Harv. L.Rev. 193 (1890) (discussing concept of privacy giving rise to independent tort remedy).

The current formulation of privacy law has been influenced to a large degree by Dean William L. Prosser, who illuminated the law of privacy in a 1960 law review article. *See* William L. Prosser, *Privacy,* 48 Cal. L.Rev. 383 (1960). Instead of just one tort, Dean Prosser wrote, the law of privacy

comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff, in the phrase coined by Judge Cooley, "to be let alone."

*Id.* at 389 (footnote omitted).

According to Dean Prosser, the four privacy torts are: (1) intrusion upon the plaintiff's seclusion or solitude, or into plaintiff's private affairs, (2) appropriation, for the defen-

the videotape at the Christmas party. The ellipses signal portions of the videotape where other participants are speaking.

dant's advantage, of the plaintiff's name or likeness, (3) public disclosure of embarrassing private facts about the plaintiff, and (4) publicity which places the plaintiff in a false light in the public eye. *See id.* This characterization of the privacy torts was later adopted by the Restatement, *see* Restatement (Second) of Torts §§ 652A–652E (1977), as well as by a number of states. *See, e.g., Corcoran v. Southwestern Bell Tel. Co.,* 572 S.W.2d 212, 214 (Mo.Ct.App.1978) (finding Prosser's distinctions useful in deciding case); *McCormack v. Oklahoma Publ'g Co.,* 613 P.2d 737, 740 (Okla.1980) (recognizing all four categories of invasion of privacy tort as described in Restatement); *Harris ex rel. Harris v. Easton Publ'g Co.,* 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984) ("[T]he Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania."). *But see Cain v. Hearst Corp.,* 878 S.W.2d 577, 578 (Tex.1994) (recognizing torts of "intrusion upon seclusion" and "publicity given to private facts," but declining to recognize "false light" privacy tort).

In the instant case, plaintiff seeks protection of her right to privacy by asking this court to hold that she is entitled to proceed to trial to have a jury decide whether the video presented at the company Christmas party violated her right to privacy, in that it subjected her to "shame [and] humiliation." *Redding v. Brady,* 606 P.2d 1193, 1195 (Utah 1980). Because plaintiff raises claims invoking all four of the distinct privacy torts, we address each below.

### FIRST BRANCH: INTRUSION UPON SECLUSION

A cause of action based on an intrusion upon seclusion was recognized by this court in *Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62 (Utah.Ct.App.), *cert. denied,* 843 P.2d 1042 (Utah 1992). In *Turner,* we stated that, in order to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party," and (2) that the intrusion "would be highly offensive to the reasonable

person." *Id.* at 67. This holding comports with the view expressed in the Restatement. *See* Restatement (Second) of Torts § 652B (1977).

■ With respect to the first element, there are two forms of intrusion upon a person's seclusion.

> One form ... consists of intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home or other quarters, or an illegal search of his shopping bag in a store. The principle has, however, been carried beyond such physical intrusion, and extended to eavesdropping upon private conversations by means of wiretapping and microphones; and there are decisions indicating that it is to be applied to peering into the windows of a home, as well as persistent and unwanted telephone calls....
>
> It is clear, however, that there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad manners, harsh names, and insulting gestures in public, are not enough.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, at 854–55 (5th ed.1984) (footnotes omitted). Thus, there is no requirement that some physical area be entered. *Cf. Vernars v. Young,* 539 F.2d 966, 969 (3d Cir.1976) (recognizing intrusion upon seclusion cause of action where personal mail was opened and read absent physical intrusion).

■ The case law that has developed over the years reveals that more is required than just an oblique reference, even to something as private as sexual matters, to establish a claim of intrusion upon seclusion. In *Haehn v. City of Hoisington,* 702 F.Supp. 1526 (D.Kan.1988), for example, the court ruled that sexual comments and brief touching could not support a claim of intrusion upon seclusion. *See id.* at 1531–32.

In reaching its decision, the court in *Haehn* cited cases typifying the tort of intrusion upon seclusion. These cases, similar to those referred to in *Prosser and Keeton,* include the " 'installation of an electronic listening device in a tenant's bedroom; taking

pictures and peeking through windows with binoculars; unauthorized prying into the plaintiff's bank account;'" and other such intrusions.[3] *Id.* at 1531 (quoting *Werner v. Kliewer,* 238 Kan. 289, 710 P.2d 1250, 1256 (1985)) (citations omitted).

■■■ Turning to the second element set forth in *Turner,* plaintiff must show that the intrusion would be highly offensive to a reasonable person. Although this determination is usually within the province of the jury, *see Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 588 (D.C.1985); *Sofka v. Thal,* 662 S.W.2d 502, 511 (Mo.1983) (en banc), "the trial court must make a threshold determination of offensiveness in discerning the existence of a cause of action for intrusion." *Wolf v. Regardie,* 553 A.2d 1213, 1219 (D.C. 1989). *Accord Miller v. Nat'l Broad. Co.,* 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, 678 (Ct.App.1986); *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.,* 111 Nev. 615, 895 P.2d 1269, 1281 (1995). In making its threshold determination of offensiveness, a court should consider such factors as "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Miller,* 232 Cal.Rptr. at 679.

■■■ In this case, defendants do not dispute that the videotape was in poor taste and its presentation rather ill-advised. Nonetheless, we must conclude that plaintiff has not established a viable claim for intrusion upon seclusion. First, it appears from the case law that has developed over the years that the intrusion-upon-seclusion tort was not designed to protect persons from the type of intrusion alleged in this case. Plaintiff was not involved in the actual filming of the video, nor did she appear in the video. Plaintiff

must show conduct by the defendant that is more intrusive than what occurred here.

Second, in our judgment, no reasonable juror could justifiably conclude that defendants' alleged intrusion would offend an ordinary reasonable person. It was readily apparent to the trial court, and would be readily apparent to a reasonable juror that, taken in context, the video presentation was intended to be a joke and nothing more. Indeed, only a couple of minutes into the video, it becomes clear that the participants are talking about something other than sex with their partners, and the ruse is obvious. Defendants' only apparent motive and objective in showing the video was to employ humor to entertain those in attendance. Thus, the trial court was correct in concluding that defendants' attempt at humor, albeit fatuous, did not rise to the level of being *highly* offensive to a *reasonable* person.

## SECOND BRANCH: APPROPRIATION OF NAME OR LIKENESS

The second invasion of privacy tort alleged by plaintiff is the tort of appropriation of name or likeness for the benefit of another. This privacy tort was examined by the Utah Supreme Court in *Cox v. Hatch,* 761 P.2d 556 (Utah 1988). *Cox* requires the plaintiff to establish three elements: (1) appropriation, (2) of another's name or likeness that has some "intrinsic value," (3) for the use or benefit of another. *Id.* at 564.

In this case, plaintiff concedes that neither her name or likeness appeared in the video. Nonetheless, plaintiff argues that anybody that knew her husband, whose likeness was presented on the video, knew automatically to whom the reference concerning his sex life was made. Plaintiff argues further that a rule requiring plaintiff's actual name to be used would do nothing but exalt form over substance. Plaintiff also argues that her

---

**3.** The court in *Haehn* distinguished the case of *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir.1983), in which the Eleventh Circuit, applying Alabama law, held that sexual comments and demands did constitute an invasion of privacy when such conduct had occurred at least two or three times a week. *See id.* at 1537. In *Phillips,* the court noted the repulsive manner in which the sexual demands

and threats were being made, as well as the frequency of defendant's misconduct. *Id.* Unlike the plaintiff in *Haehn,* the plaintiff in *Phillips* was able to show that the "intrusive and coercive sexual demands" were "improper inquiries into [the plaintiff's] personal sexual proclivities and personality," *id.* at 1536, and, thus, that all of the requisite elements contemplated by the Restatement were met.

identity as Bauman's wife was used to create entertainment for corporate purposes.

■ It is axiomatic that "[t]he interest protected by the [appropriation tort] ... is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his *name or likeness,* and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts § 652C cmt. a (1977) (emphasis added). In order to invoke this protection, plaintiff must be able to establish that her identity in the video was represented by her name or likeness. In this case, there is absolutely no reference in the video to plaintiff's name or likeness. Although Mr. Bauman referred to his wife coming home and uncovering a smell, this passing reference is wholly insufficient to establish an appropriation claim. Therefore, the trial court was correct in ruling that plaintiff's name or likeness was not appropriated by defendants.

## THIRD BRANCH: PUBLICITY GIVEN TO PRIVATE FACTS

The third of the privacy torts is that of publicity given to private facts. Dean Prosser synthesized from the case law three elements for this tort:

(1) the disclosure of the private facts must be a public disclosure and not a private one;

(2) the facts disclosed to the public must be private facts, and not public ones; and

(3) the matter made public must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, at 856–57 (5th ed.1984) (footnote omitted). The Restatement added to these requirements the notion that the public must not have a legitimate interest in having the information made available. *See* Restatement (Second) of Torts § 652D (1977). "It is important to stress that this privacy tort permits recovery for *truthful* disclosures." *Romaine v. Kallinger,* 109 N.J. 282, 537 A.2d 284, 292 (1988) (emphasis in original).

■ Turning to the facts in this case, plaintiff's claim of public disclosure of private facts must fail because there was no disclosure of any factual information regarding plaintiff's private affairs. Plaintiff's husband responded to a question regarding a household chore. It is clear in viewing the video that he was not really speaking about his sex life. Thus, to the extent Bauman's statements on the video suggest that having sex with his wife is disgusting and distasteful, those statements were simply not true—they are not *facts*—and were not intended to be taken as true by viewers of the video. Stated another way, the videotape did not convey or publicize actual facts or even purported facts regarding plaintiff's private affairs. Accordingly, the trial court correctly dismissed this claim.

## FOURTH BRANCH: FALSE LIGHT

■ The "false light" privacy tort provides that one is subject to liability to another for invasion of privacy if (1) he or she gives publicity to a matter concerning another that places the other before the public in a false light[; (2) ] the false light in which the other was placed would be highly offensive to a reasonable person[;] and [ (3) ] the actor ha[d] knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 907 (Utah 1992) (quoting Restatement (Second) of Torts § 652E (1977)).

■ A false light claim is "closely allied" with an action for defamation, and "the same considerations apply to each." *Cibenko v. Worth Publishers, Inc.,* 510 F.Supp. 761, 766–67 (D.N.J.1981). Under the law of defamation, "[a] parody or spoof that no reasonable person would read as a factual statement, or as anything other than a joke[,] ... cannot be actionable as a defamation." *Walko v. Kean College,* 235 N.J.Super. 139, 561 A.2d 680, 683 (1988). Similarly, an action for "false light" invasion of privacy cannot survive when the publication or statement sued upon cannot be reasonably viewed as a factual claim and is nothing more than a joke or a spoof. *See Partington v. Bugliosi,* 825

F.Supp. 906, 925 (D.Haw.1993), *aff'd,* 56 F.3d 1147 (9th Cir.1995); *Hicks v. Casablanca Records,* 464 F.Supp. 426, 433 (S.D.N.Y. 1978); *Byrd v. Hustler Magazine, Inc.,* 433 So.2d 593, 595 (Fla.Dist.Ct.App.1983); *Walko,* 561 A.2d at 688.

In *Walko,* a college administrator brought an action for defamation and false light invasion of privacy for a phony ad published in the Kean College student newspaper. The ad was included among several other phony "ads" and identified the plaintiff, among three other individuals, as someone available for "good phone sex." *Id.* at 682. On appeal from the trial court's order granting defendant's motion for summary judgment, the New Jersey court held, drawing from defamation law, that "[w]here the court has already determined that no reasonable reader would interpret the ad ... as a factual claim about the plaintiff's availability for 'good telephone sex,' the 'false light' cause of action must ... fail." *Id.* at 688. *See also Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1019–20 (1st Cir.) (holding photograph of four young girls giving thumbs down sign obtained by Associated Press and later reprinted in news section of *Penthouse* magazine did not place girls in false light; as a matter of law, photograph not reasonably capable of implying endorsement of magazine's editorial views), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *Pring v. Penthouse Int'l, Ltd.,* 695 F.2d 438, 441–42 (10th Cir.1982) (holding sexual parody in magazine did not place plaintiff in false light when parody could not be taken literally and could not reasonably be considered statement of fact), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983).

In the instant case, the trial court correctly concluded that the videotape did not place plaintiff in a false light. No reasonable viewer would treat the production as a factual commentary on plaintiff's sex life or any other private matter. While the "false light" tort protects individuals from "major misrepresentation[s] of ... character, history, activities or beliefs", *see* Restatement (Second) of Torts § 652E cmt. c (1977), if a statement cannot reasonably be taken as factual, as with the contrived statements in

the videotape about sex with the participants' partners, the statement does not amount to false light invasion of privacy because the public—or in this case the 200 party-goers—did not receive a false impression about plaintiff. Those viewing the video had to know it was a spoof, devoid of any real or purported factual material. Summary judgment was therefore proper as to plaintiff's claim of "false light" invasion of privacy.

## CONCLUSION

Plaintiff's invasion of privacy claims fail as a matter of law. Plaintiff's claim of intrusion upon seclusion fails because, as a matter of law, the alleged intrusion upon her private life with her husband is not highly offensive. Because plaintiff did not appear in the video by name or likeness, her claim of appropriation must likewise fail. Further, plaintiff has not shown that the statements disclosed on the video were factual and that the video could have been understood by a reasonable person to be something other than a joke or spoof. Therefore, plaintiff's claims of publicity given to private facts and of portrayal in a false light must also fail. Accordingly, the judgment appealed from is affirmed.

DAVIS, P.J., and BENCH, J., concur.