**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AARON RAISER, also known as T.G.,

Plaintiff-Appellant,

v.

THE CHURCH OF JESUS CHRIST
OF LATTER-DAY SAINTS;
BRIGHAM YOUNG UNIVERSITY,

Defendants-Appellees.

No. 06-4066
(D.C. No. 2:04-CV-896-TC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

Aaron Raiser sued Brigham Young University (BYU) and the Church of

Jesus Christ of Latter-Day Saints (the Church) after BYU stated in other litigation

that he had a "known . . . psychiatric history." R., Vol. 1, Doc. 9 (Ex. A at ii).

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court granted BYU and the Church summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

According to his father, Mr. Raiser has been diagnosed as suffering from bipolar schizophrenia. His parents committed him to the Central Ohio Psychiatric Hospital for treatment in February 1991. But after several months he escaped and traveled to Provo, Utah.

In August 1991 the BYU police department received the following information regarding Mr. Raiser:

> Walked away from Psychiatric Hospital in Columbus, OH. BYU grad and [returning missionary]; may find his way to [Salt Lake City] or Provo. Not dangerous, but peculiar behavior. Call parents Ed or Loraine, or sister Ginny [phone number omitted] if seen. Call collect; leave message.

Supp. R., Vol. 2, Doc. 152, Ex. A (Police Record at 4). Mr. Raiser's father testified that he or another family member probably supplied this information.

In January 1992 Mr. Raiser met with BYU General Counsel and Church Stake President, Eugene Bramhall,[1] "in order to obtain approval to attend BYU as a graduate student," *id.*, Doc. 153, Ex. C (Aaron Raiser Aff. at 1). Three months

---

[1] In the Church, a stake president presides over a group of wards. *Scott v. Hammock*, 870 P.2d 947, 949 n.1 (Utah 1994). Stake presidents "receive no formal educational training as clergymen, are not compensated by the Church, and perform their ecclesiastical duties in addition to their vocations." *Id.*

later Bramhall sent BYU's admissions committee a conditional endorsement for Mr. Raiser's admission:

> Aaron meets all of the usual admission standards. However, by personal observation, confirmed by his bishop [Dan Towsey] & family, it is apparent that he has an emotional or psychological deficit. I am also told, but have not personally verified that he has been hospitalized for schizophrenia & that he has something called a "sensory deficit" as well. I believe that he presently takes no medication for his condition. I believe that Aaron can benefit from intensive counseling, & that the possibility of his receiving important counseling is highest if he is admitted to the university.

*Id.*, Vol. 2, Doc. 153, Ex. A. Mr. Raiser "was given approval to attend BYU." *Id.*, Ex. C (Aaron Raiser Aff. at 1).

In July 1996, however, Mr. Raiser was "banned from campus," *id.* at 2, and was therefore unable to "attend church and church related activities on Sundays," *id.* at 3, because his student ward met on campus. He appealed to the chairman of BYU's access committee, Dave Thomas, who also worked in BYU's Office of General Counsel. After purportedly discussing the matter with Bramhall, as urged by Mr. Raiser, Thomas gave Mr. Raiser permission to attend church on campus.

In 2002 Mr. Raiser sued BYU pro se in federal district court, alleging that he had been abused and mistreated by campus police. *See Raiser v. Brigham Young Univ.*, No. 2:02-cv-975 (D. Utah) (Am. Compl. at 3) (*Raiser I*). In a motion to dismiss the complaint, the assistant general counsel for BYU, Erik Davis, wrote the following passage, which spawned the present litigation:

-3-

Mr. Raiser has an extensive history of encounters with the Police . . . . Most of the . . . encounters with Mr. Raiser have been in response to calls from concerned students or faculty members who have felt threatened or uneasy because of Mr. Raiser's presence on campus at unusual times and places and/or his bizarre or suspicious behavior and appearance. . . . These incidents and the circumstances surrounding them have justifiably caused BYU Police officers to treat Mr. Raiser with a certain amount of caution, but their actions towards Mr. Raiser have in all ways been reasonable and justified in light of Mr. Raiser's suspicious and bizarre behavior and his *known . . . psychiatric history*.

R., Vol. 1, Doc. 9, Ex. A (Mem. in Support of Mot. to Dismiss at i-ii) (emphasis added).

In September 2004 Mr. Raiser, again acting pro se, filed this suit against BYU and the Church in federal district court in Utah, claiming that they had maliciously and falsely asserted that he had a "known . . . psychiatric history." R., Vol. 1, Doc. 1 (Compl. at 2); *id.*, Doc. 65 (Am. Compl. at 3). Mr. Raiser alleged (1) that Bishop Towsey had told Bramhall that "Plaintiff had been institutionalized in another state and declared incompetent." R., Vol. 1, Doc. 1 (Compl. at 2) (internal quotation marks omitted); *id.*, Doc. 65 (Am. Compl. at 2) (internal quotation marks omitted); (2) that "[t]his information, that Plaintiff had a psychiatric history was in turn communicated to others of the general counsel staff," and then published in support of the motion to dismiss. R., Vol. 1, Doc. 1 (Compl. at 2); *id.*, Doc. 65 (Am. Compl. at 3); (3) that "information that Plaintiff had been institutionalized could have come from the [BYU] police department," R., Vol. 1, Doc. 1 (Compl. at 3); *id.*, Doc. 65 (Am. Compl. at 3); and (4) that

Bramhall "communicated the information that Plaintiff was institutionalized to the police," R., Vol. 1, Doc. 1 (Compl. at 4); *id.*, Doc. 65 (Am. Compl. at 4). Mr. Raiser pleaded claims for breach of privacy, defamation, "False Light," "Violation of Separation of Church State," and "Violation of American's with [D]isabilities Act." R., Vol. 1, Doc. 1 (Compl. at 5-8).

In December 2004 the Church moved for summary judgment. Later that month Mr. Raiser moved to amend his complaint to add a claim for breach of confidence. In April 2005 the district court denied the Church's summary-judgment motion without prejudice, extended the deadline for discovery to July 19, 2005, and authorized Mr. Raiser to depose Davis, Bramhall, and Towsey. The district court also ordered that the motion to amend be held in abeyance pending the resolution of discovery and summary-judgment issues.

In June 2005 Mr. Raiser filed another motion to amend the complaint. He stated that "[t]he new proposed Complaint . . . is essentially the same as the first except that it removes two causes of action [defamation and false light] and simplifies the fact allegations." R., Vol. 1, Doc. 65 (Mot. at 1). The district court granted the motion, noting that "[t]he amended complaint is essentially a streamlined replica of the old complaint." Supp. R., Vol. 3, Doc. 210 (Order at 10).

On July 26, 2005, after the discovery deadline had passed without Mr. Raiser's having conducted any depositions, the Church renewed its summary-

judgment motion. BYU also moved for summary judgment. In February 2006 the district court granted the motions, ruling that (1) Mr. Raiser's privacy claim against the Church failed because there was no evidence that the Church disclosed any private information to the public; (2) Mr. Raiser's privacy claim against BYU was barred by the judicial-proceeding privilege; (3) Mr. Raiser lacked standing to sue BYU under the First Amendment; and (4) Mr. Raiser had withdrawn his ADA claim. The district court also denied Mr. Raiser's December 2004 motion to amend, which had been held in abeyance. Mr. Raiser appealed.

## DISCUSSION

### I. Summary Judgment

We review de novo the district court's grant of summary judgment. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In conducting our analysis, we view all the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences from the record in that party's favor. *Stover*, 382 F.3d at 1070. But while the burden of showing the absence of a genuine issue of material fact rests with the party seeking summary judgment, the opposing party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006) (internal quotation marks omitted). The opposing party must "make[ ] a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (internal quotation marks omitted).

*A. Breach of Privacy*

Mr. Raiser's privacy claim appears to be premised on the public disclosure of an embarrassing private fact. *See Shattuck-Owen v. Snowbird Corp.*, 16 P.3d 555, 558 (Utah 2000) (addressing an invasion-of-privacy claim against an employer who allowed numerous people to view a surveillance video of the employee-plaintiff's sexual assault). Regarding the Church's liability on this claim, there is no dispute that the disclosure about Mr. Raiser's "known . . . psychiatric history" was not made by the Church, but by Erik Davis, a BYU attorney. Mr. Raiser speculates about a number of other possible disclosures by people affiliated with the Church, but all the alleged disclosures were private conversations, with the possible exception of the disclosures of information to the police. Mr. Raiser's father, however, testified that the likely source of the information received by the police was Mr. Raiser's family, and there is no contrary evidence. A viable privacy claim requires a disclosure "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 558 (internal quotation marks

-7-

omitted).  As a matter of law these alleged disclosures were too limited to be considered public.

As for BYU, its disclosure in a court pleading that Mr. Raiser has a "known . . . psychiatric history" was protected by Utah's judicial-proceeding privilege. To qualify for the privilege, the challenged statements "must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *DeBry v. Godbe*, 992 P.2d 979, 983 (Utah 1999) (internal quotation marks omitted); *see also Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 906 n.37 (Utah 1992) (extending the privilege to invasion-of-privacy claims).  The statement concerning Mr. Raiser's mental health was relevant to Mr. Raiser's claim in *Raiser I* that the police had abused and mistreated him.

Mr. Raiser appears to seek an exception to the judicial-proceeding privilege when the district court has neither sealed nor conducted an in camera review of a document before allowing "a disclosure of highly sensitive information obtained through an unlawful act."  Aplt. Br. at 43.  But he cites no authority for the proposition, nor are we aware of any.  *See Rios v. Ziglar*, 398 F.3d 1201, 1206 n.3 (10th Cir. 2005) ("To make a sufficient argument on appeal, a party must advance a reasoned argument . . . and it must support its argument with legal authority." (internal citation omitted)).

To the extent that Mr. Raiser is claiming that BYU made other disclosures, none were public, so there would be no liability. *See Shattuck-Owen*, 16 P.3d at 558. We conclude that the district court did not err in granting summary judgment on Mr. Raiser's privacy claims.

## B. *Establishment Clause*

The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const., amend. I. This proscription applies to the States via the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). An Establishment Clause violation occurs if (1) the challenged government action lacks a secular purpose; (2) the action's principal or primary effect advances or inhibits religion; or (3) the action fosters an excessive governmental entanglement with religion. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1259 (10th Cir. 2005). Mr. Raiser's claim is of the excessive-entanglement variety. He alleged that the "[state] statute . . . which allows [BYU] to maintain a state empowered police force . . . fosters an excessive governmental entanglement with religion," and that "[t]he state/church entanglement has injured Plaintiff . . . [by] allow[ing] private information concerning Plaintiff to be exchanged between [BYU] and its police." R., Vol. 1, Doc. 1 (Compl. at 8, ¶¶ 67, 71); *id.*, Doc. 65 (Am. Compl. at 5, ¶¶ 45, 49).

To have standing to assert an Establishment Clause violation, Mr. Raiser "must allege personal injury fairly traceable to [BYU's] allegedly unlawful conduct and likely to be redressed by the requested relief." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005) (emphasis omitted), *cert. denied,* 126 S. Ct. 1469 (2006). Conducting de novo review, *see Raiser v. United States*, 325 F.3d 1182, 1183 (10th Cir. 2002), we agree with the district court that Mr. Raiser lacks standing. Nothing in the record suggests that Mr. Raiser's injury from the alleged exchange of private information between BYU and its police force occurred *because of* any entanglement between government and religion. As far as this case is concerned, the relationship between BYU and its police force was indistinguishable from that between a secular private university and its police force. There was simply no religious component to the police force's conduct. Mr. Raiser's argument amounts to saying that liability arises under the Establishment Clause for *any* conduct by the police force of a university controlled by a religious denomination.

Mr. Raiser argues that nevertheless the district court could not rule that he lacked standing, because "BYU never challenged injury due to excessive entanglement." Aplt. Br. at 46. But even if a defendant fails to raise *any* standing defense, the federal courts must still consider the issue of standing sua sponte to ensure that there is subject-matter jurisdiction. *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1166 (10th Cir. 1996). Mr. Raiser also asserts that "BYU

[h]as [a]dmitted [a]n Establishment Clause [v]iolation." Aplt. Br. at 48. But we find no support in the record for that assertion. Of course, we would remand to the district court to consider a standing argument raised for the first time on appeal if the plaintiff had been deprived of the opportunity to marshall evidence that would support standing; but Mr. Raiser does not suggest what possible evidence he could add on this matter if given an opportunity.

We conclude that the district court properly ruled that Mr. Raiser lacked standing to proceed under the Establishment Clause.

## II. Discovery

Mr. Raiser appears to argue that summary judgment was inappropriate because he was hampered in his discovery efforts by the district court, BYU, and the Church. We review discovery rulings for an abuse of discretion. *See Champagne Metals*, 458 F.3d at 1082 n.7.

Among other things, Mr. Raiser claims that (1) he was denied the opportunity to depose Davis by telephone; (2) he was not allowed to reschedule Davis's deposition; (3) he was denied any opportunity to depose Thomas; (4) the district court found that "BYU was not being cooperative, but only required them to answer 2 of the Interrogatories," Aplt. Br. at 18, which were not signed by an attorney of record, *id.* at 34; (5) the district court would not require BYU to produce the "Access Committee notes regarding the Bramhall-Thomas conversations," *id.* at 19; and (6) BYU failed to answer various discovery

-11-

requests. But even if these claims were valid, the alleged errors did not affect the outcome of the case. None of the discovery sought would render public any disclosure by the Church or undermine BYU's judicial-proceeding privilege. Accordingly, we reject Mr. Raiser's discovery argument as moot. *Cf. Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1197 (2006) (discovery dispute moot because the defendants were entitled to qualified immunity in any event).

## III. Pleading Amendment

Mr. Raiser argues that the district court erred in denying his motion to add a breach-of-confidence claim to the complaint. We review for an abuse of discretion the denial of a motion to amend the complaint. *E.SPIRE Comm., Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *Id.* (internal quotation marks omitted).

The district court denied Mr. Raiser's motion as futile. We agree. Utah's judicial-proceeding privilege would apply to this claim. *See Russell*, 842 P.2d at 906 n.37. And communications within the BYU administration would not have breached any promise of confidentiality.

## IV. Use of a Pseudonym

Finally, Mr. Raiser challenges the district court's denial of his motion for sanctions against the Church for revealing his identity while his motion to use a pseudonym was still under consideration. The district court ultimately denied Mr. Raiser's motion to use a pseudonym, and another panel of this court affirmed, observing that *Raiser I* also included an unsuccessful interlocutory appeal on the pseudonym issue, and that afterward Mr. Raiser's identity remained in the public domain in connection with the litigation. *See Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006). The district court did not abuse its discretion in denying the motion for sanctions. *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006) ("[W]e review a district court's decision whether or not to impose sanctions . . . for an abuse of discretion.").

The judgment of the district court is AFFIRMED.[2]

Entered for the Court

Harris L Hartz
Circuit Judge

---

[2] Mr. Raiser's motions to strike and for the same panel to hear this appeal and appeal No. 06-4116 are denied. Mr. Raiser's motions for an extension of time, for "Actual Justices [to] Decide the Above Motions," and for a panel member to draft the disposition are denied as moot.