GORSUCH, Circuit Judge,
concurring.
I agree with the court’s holding in all respects and join its reasoning with one minor exception. Even with respect to that exception, I agree with the result the court reaches, arriving at a common destination but only by a different route.
The question the court confronts in Section ILB.l.a is whether probable cause existed to think that Mr. Mink’s column constituted “criminal libel.” I agree with my colleagues that the answer to that question must be “no.” I reach this conclusion for a simple and straightforward reason: this court has already said so. Pring v. Penthouse International, Ltd., 695 F.2d 438 (10th Cir.1982), established in this circuit the rule that the First Amendment precludes defamation actions aimed at parody, even parody causing injury to individuals who are not public figures or involved in a public controversy. Pring is binding on us, answers the probable cause question at issue, and is thus the beginning and end of my inquiry on that question. After noting Pring controls, the majority proceeds in Section II.B. l.a to offer a lengthy new defense of that decision. The majority may be right in all it says. But this isn’t beyond peradventure. As the majority notes, the Supreme Court has yet to address how far the First Amendment goes in protecting parody. Maj. Op. at 1006. And reasonable minds can and do differ about the soundness of a rule that precludes private persons from recovering for reputational or emotional damage caused by parody about issues of private concern. One might argue, for example, that such a rule unnecessarily constitutionalizes limitations that state tort law already imposes. See, e.g., Stien v. Marriott Ownership Resorts, Inc., 944 P.2d 374, 380 (Utah Ct.App.1997) (“Under the law of defamation, ‘[a] parody or spoof that no reasonable person would read as a factual statement, or as anything other than a joke[,] ... cannot be actionable as a defamation.’ ” (quoting Walko v. Kean College, 235 N.J.Super. 139, 561 A.2d 680, 683 (1988))); Maj. Op. at 1007-08 n.10 (citing state cases, some of which rest their holdings on common law, not constitutional, grounds). Or that such a rule may unjustly preclude private persons from recovering for intentionally inflicted emotional distress regarding private matters, in a way the First Amendment doesn’t compel. See, e.g., Catherine L. Amspacher & Randel Steven Springer, Note, Humor, Defamation and Intentional Infliction of Emotional Distress: The Potential Predicament for Private Figure Plaintiffs, 31 Wm. & Mary L.Rev. 701 (1990); Robert C. Post, The Constitutional Concept of Public Discourse: Outrageous Opinion, Democratic Deliberation, and Hustler Magazine v. Falwell, 103 Harv. L.Rev. 601, 662 (1990) (arguing that the First Amendment does not “absolutely protect! ] all verbal means of intentionally inflicting emotional distress, all forms of *1013 racial, sexual, and religious insults, so long as the offending communications do not contain false factual statements”).
Respectfully, I would avoid these thickets. Whoever has the better path through them, it’s better yet that we sidestep them altogether. To decide the case currently before us, it’s enough to say we are bound by Pring, and so was the district court. Beyond that, I would not venture. See PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in the judgment) (“[I]f it is not necessary to decide more, it is necessary not to decide more.”). Accordingly, I join all but Section ILB.l.a of the court’s opinion and concur in its judgment.

EXHIBIT A

STATE OF COLORADO
COUNTY OF WELD
ss.
NO__DIVISION_
IN THE DISTRICT COURT
NINETEENTH JUDICIAL DISTRICT
SEARCH WARRANT
THE PEOPLE OF THE STATE OF COLORADO:
TO: Any Any officer authorized by law to execute a search warrant in the County wherein the property is located.
Ken Warren, having this date filed an Affidavit for a Search Warrant in conformity with the provisions of Colorado Rules of Criminal Procedure, 41(b) and (c), for the following described property, to-wit:
1) Any and all computer systems and computer equipment to include, but not limited to, central processing units and circuit boards attached or unattached to the computer system.
2) Any and all storage media to include, but not limited to, floppy diskettes, hard disk drives, removable disk drive cartridges and drives, magnetic computer tapes, compact disks, and any other device capable of storing information in a magnetic/optical form, whether internal or external to the computer system, attached or unattached to the computer system.
3) Any and all computer peripheral devices attached or unattached to the computer to include but not limited to computer monitors, printers, keyboards, modems, or other physical devices which serve to transmit or receive information to and from the computer.
4) Any and all documents which serve the purpose of explaining the way in which the computer hardware, programs, and data are used, including manuals for computer equipment or software, printouts of computer programs, data files, or other information which has been or continues to be stored electronically or magnetically in the computer system.
5) Any and all computer programs or software , used in the operation of the computer system, used to transmit or receive information, used to display or print graphics or other types of files, and all other computer programs and software associated with the computer system to include all programs stored on the computer, floppy disk, CD’s, or other storage media.
6) Any and all papers, documents, or other readable material, whether generated by handwriting, typewriter, computer or other device, which contains names, addresses, or telephone *1014 numbers, and passwords for this, or other computer systems.
7) Any and all correspondence, diaries, memoirs, journals, personal reminiscences electronic mail (email), letters, notes, memorandum, or other communications in written or printed form.
8) Indicia of occupancy consisting of articles of personal property tending to establish the identity of the person or persons in control of the premises at 310 West 5th St, Ault, Weld County, Colorado, including, but not limited to rent receipts, canceled mail, keys, utility bills and telephone bills.
9) Any and all passwords, encryption keys, access codes or other security or privacy devices, whether of a physical, written or oral form, used to encrypt, encode, or otherwise limit access to information, files, programs, accounts or other data associated with or stored on the computer.
10) Any proof of ownership or maintenance of control of electronic or computer related equipment, programs, data, or documentation at that address including correspondence, invoices, or similar items.
11) Your affiant is seeking permission to examine the computer and storage devices for any and all data, correspondence, electronic mail, voice messages, letters, notes, ledgers, spreadsheets, documents, memorandum, image, video, sound or graphic files for evidence of, or the presence of:
Any connection by this computer to the website “www.geocities.com/ thehowlingpig/” to include evidence of email generated by the Web Site “www.geocities.com/thehowlingpig'” and forwarded to or accessed by this computer.
Any evidence of documents prepared or stored on this computer which relate to the website “www.geoeities. com/thehowlingpig/”.
Any evidence relating to the creation, access (log-in) or maintenance of the website “www.geocities.com/ thehowlingpig/”.
Any and all passwords, encryption keys, access codes or other security or privacy devices, whether of a physical, written or oral form, used to encrypt, encode, or otherwise limit access to information, files, programs, accounts or other data associated with or stored on the computer.
Any proof of ownership, maintenance or control of the computer related equipment, programs, data, correspondence, invoices, registration keys, or similar items.
Any and all diaries, memoirs, journals, personal reminiscences, correspondence, letters, notes, memorandum, stories, electronic mail or other communications in written or oral form, stored on the computer evidence seized as those items may relate to the allegations:
believed to be situated (on the person) (at the place) or (in the vehicle) known as:
310 5th W St
Ault, Colorado
A light Brown, single story, single family dwelling.
With brick on the lower portion of the outside.
The address 310 is prominently posted next to the porch light on the East side of the front door. This house is the 3rd house east of Ash on south side of 5th Street.
upon one or more grounds as set forth in Rule 41(b), Colorado Rules of Criminal Procedure, namely:
*1015 (1) is stolen or embezzled;
(2) is designed or intended for use or which is or has been used as a means of committing a criminal offense or the possession of which is illegal;
(3) would be material evidence in a subsequently criminal prosecution;
The names of persons whose affidavits have been taken in support hereof are: Ken Warren, and I am satisfied that there is probable cause to believe that the property so described is located on the person, premises or in the vehicle above described, YOU ARE THEREFORE COMMANDED to search forthwith the person, place, or vehicle above described, for the property described at any time, day or night. This Warrant shall be executed within ten (10) days of the date the Warrant is issued. The return shall be made promptly and shall be accompanied by a written inventory of all property taken. You shall deliver to the person from whom the property is taken or from whose premises or vehicle the property is taken a copy of this Warrant together with a receipt for the property taken or, in lieu thereof, to leave the copy and receipt at the place from which the property is taken; and to deliver to the issuing judge a written inventory of the property with the return of this Warrant.
Dated this_ day of DEC 12 2003, 2003, at Weld County, Colorado, at__ A.M./P.M.
/s/
JUDGE

EXHIBIT B

IN THE DISTRICT COURT, IN AND FOR THE COUNTY OF WELD, BEFORE JUDGE 03CR1

AFFIDAVIT FOR SEARCH WARRANT UNDER RULE 16

Your affiant, Ken Warren, being first duly sworn, upon his oath says: that he has reason to believe that (on the person) (at the place) or (in the vehicle) known as:
310 5th W St
Ault, Colorado
A light Brown, single story, single family dwelling
With brick on the lower portion of the outside.
The address 310 is prominently posted next to the porch light on the East side of the front door. This house is the 3rd house east of Ash on south side of 5th Street.
there is now located certain property, to-wit:
1. Any and all computer systems and computer equipment to include, but not limited to, central processing units and circuit boards attached or unattached to the computer system.
2. Any and all storage media to include, but not limited to, floppy diskettes, hard disk drives, removable disk drive cartridges and drives, magnetic computer tapes, compact disks, and any other device capable of storing information in a magnetic/optical form, whether internal or external to the computer system, attached or unattached to the computer system.
3. Any and all computer peripheral devices attached or unattached to the computer to include but not limited to computer monitors, printers, keyboards, modems, or other physical devices which serve to transmit or receive information to and from the computer.
4. Any and all documents which serve the purpose of explaining the way in which the computer hardware, pro *1016 grams, and data are used, including manuals for computer equipment or software, printouts of computer programs, data files, or other information which has been or continues to be stored electronically or magnetically in the computer system.
5. Any and all computer programs or software used in the operation of the computer system, used to transmit or receive information, used to display or print graphics or other types of files, and all other computer programs and software associated with the computer system to include all programs stored on the computer, floppy disk, CD’s, or other storage media.
6. Any and all papers, documents, or other readable material, whether generated by handwriting, typewriter, computer or other device, which contains names, addresses, or telephone numbers, and passwords for this, or other computer systems.
7. Any and all correspondence, diaries, memoirs, journals, personal reminiscences electronic mail (email), letters, notes, memorandum, or other communications in written or printed form.
8. Indicia of occupancy consisting of articles of personal property tending to establish the identity of the person or persons in control of the premises at 310 West 5th St, Ault, Weld County, Colorado, including, but not limited to rent receipts, canceled mail, keys, utility bills and telephone bills.
9. Any and all passwords, encryption keys, access codes or other security or privacy devices, whether of a physical, written or oral form, used to encrypt, encode, or otherwise limit access to information, files, programs, accounts or other data associated with or stored on the computer.
10. Any proof of ownership or maintenance of control of electronic or computer related equipment, programs, data, or documentation at that address including correspondence, invoices, or similar items.
11. Your affiant is seeking permission to examine the computer and storage devices for any and all data, correspondence, electronic mail, voice messages, letters, notes, ledgers, spreadsheets, documents, memorandum, image, video, sound or graphic files for evidence of, or the presence of:
Any connection by this computer to the website “www.geocities.com/ thehowlingpig/” to include evidence of email generated by the Web Site “www.geocities.com/thehowlingpig/” and forwarded to or accessed by this computer.
Any evidence of documents prepared or stored on this computer which relate to the website “www.geocities. com/thehowlingpig/”.
Any evidence relating to the creation, access (log-in) or maintenance of the website “www.geocities.com/ thehowlingpig/”.
Any and all passwords, encryption keys, access codes or other security or privacy devices, whether of a physical, written or oral used to encrypt, encode, or otherwise limit access to information, files, programs, accounts or other data associated with or stored on the computer.
Any proof of ownership, maintenance or control of the computer related equipment, programs, data, correspondence, invoices, registration keys, or similar items.
Any and all diaries, memoirs, journals, personal reminiscences, correspondence, letters, notes, memorandum, *1017 stories, electronic mail or other communications in written or oral form, stored on the computer evidence seized as those items may relate to the allegations,
which property:
(1) is stolen or embezzled:
(2) is designed or intended for use or which is or has been used as a means of committing a criminal offense or the possession of which is illegal;
(3) would be material evidence in a subsequent criminal prosecution;
Based upon the following facts:
Your affiant is a police officer for the City of Greeley Police Department and has gained the following information from reading the reports and speaking to fellow officers, from reading the statements of the victim and witnesses and through personal investigation.
Your affiant is currently assigned to the Greeley Police Department, Weld County Forensic Laboratory. Your affiant is responsible for conducting forensic computer analysis on evidence submitted, and for investigating Internet or online related investigations. Your affiant has undergone extensive training on the recovery and documentation of evidence relating to computers, Internet activity, and data recovery from digital media. Your affiant has been examining digital media in excess of Three (3) years.
On November 14th 2003, Junius Peak reported to the Greeley Police Department that he was the victim of what he believed was criminal libel. He reported to Detective Warren that he discovered an Internet Website at the address of www.geocities.com/thehowlingpig. He discovered this website after being sent a copy of the site printed by one of his colleagues at The University of Northern Colorado. He told Detective Warren that there were several copies of this site being passed around on campus. Detective Warren went to the website via an Internet connection at the police department. Upon reading the articles posted on the website, Detective Warren found that the site was apparently designed with a logo that mimics that of The University of Northern Colorado. The website also has a picture of Junius Peak on the main page as well as other pages. The picture of Mr. Peak is from the University of Northern Colorado’s Website. The picture has been altered to include sunglasses, a smaller nose and a small moustache similar to that of Hitler’s. The person in the photograph is identified on the website as Junius Puke. The picture is accompanied by a biography of Mr. Puke. According to the site, its purpose is to draw attention to issues rampant in Northern Colorado and Elsewhere.
The body of the website includes three articles at the time of this affidavit. The articles consist of statements about various topics and persons relating to the Northern Colorado Area and The University of Northern Colorado. According to Mr. Peak, there are many statements in the website and its accompanying articles that are defamatory to his character. He told Detective Warren that the statements made on the website about him are false. He feels that the articles have brought him embarrassment and exposed him to public hatred, contempt and ridicule. He feels they have impeached his honesty, integrity, virtue, and reputation within the community.
When asked to site a few specific examples of this criminal libel, Mr. Peak cited the following examples:
*1018 1) The website uses his photograph and identifies him as the Editor in Chief Junius Puke.
2) The website states that he “gambled in tech stocks” in the 90’s.
3) The website states: The dark glasses are to avoid being recognized since he fears the good natured ribbing of his colleagues on Wall Street where he managed to luck out and ride the tech bubble of the nineties like a $20 whore and make a fortune.
X The website contains many opinions and articles about The University of Northern Colorado, the Greeley Community and Northern Colorado. As this is an “editorial” column, those statements are attributed to Mr. Puke, and therefore Mr. Peak. Mr. Peak feels that these opinions are not his but have been attributed to him.
A full printout of the site as it existed on November 19th is attached to this affidavit at “Attachment A”. It consists of 6 pages including the cover.
Your affiant researched the website and found that it was hosted by Geocities.com. Geocities.com is owned and operated by Yahoo Inc. Your affiant contacted Yahoo and learned that they do archive information relating to the Internet connections established during the creation and maintenance of Geocities sites. They also maintain records to include email for any associated Yahoo accounts. There is a yahoo account associated with this site and its address is “thehowlingpig@yahoo.com”. Yahoo told your affiant they will release this information upon the receipt of a court order.
Your affiant applied for and received an order for the production of the records held by Yahoo for the aforementioned Geocities website. These records included a listing of the connections and log-in activity for the website by anyone with credentials to log into the site. These records DO NOT reflect persons accessing the site, but not logging in (persons only reading the site). This connection information included a number of Internet Protocol Addresses that belong to ICG Telecom Group Inc. Your affiant contacted ICG Telecom Group Inc., and spoke to a Subpoena Compliance Investigator named Carl Nixon. He advised your affiant that his company is a backbone provider for other Internet Service Providers (ISP). His company maintains dial in access and bandwidth (service) for other ISPs to resell to their customers. Carl Nixon told your affiant that they archive connection information for each transaction and that information may include ANI (Automatic Number Identification) or Caller ID information. Carl Nixon told your affiant that his company would produce this information as well as account holder (ISP) information for each connection, upon receipt of a Colorado Court Order.
Your affiant applied for and received a Court Order for records held by ICG Telecom Group Inc. On December 11th, 2003, your affiant received a fax response from ICG Telecom Group Inc. Subpoena Compliance Investigator Steffani Rink. The report Rink provided showed that all connections via ICG Telecom Group’s equipment came from the residence telephone number 970-834-2715, as captured and reported by their system. All connections also showed the username “crysmink” and the connections were made on behalf of the Internet Service Provider Front Range Internet Inc. Your affiant researched this telephone number through public telephone record reverse lookup. The telephone number belongs to the residence *1019 310 W 5th St, in the City of Ault, Weld County, Colorado. Your affiant also learned that this number is listed to Robert Mink. Your affiant checked records at the University of Northern Colorado. Your affiant learned that a student was registered at The University of Northern Colorado under the name Thomas Mink. His address also lists to 310 W 5th St in Ault, Co. Your affiant also learned from UNC, that his mother is listed as Crystal Mink which generally matches the user-name provided by Rink.
It is your affiant’s training and experience that this information contained on computer media cannot be readily accessed at the location the computer is seized from. The computer will need to be removed, and processed in a forensic laboratory setting. This may involve imaging the media to be examined and then conducting an analysis on that image. Processing the computer on scene may result in an incomplete examination and could result in destruction of data present on the media. Removal and examination in a controlled setting will prevent the destruction of data and will allow for a complete analysis.
Dated this 12th day of December, 2003.
/s/
AFFIANT
This Affidavit, consisting of 5 pages, was subscribed and sworn to before me this 12th day of December, 2003.
/s/
JUDGE